IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| AMBER LITTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 6:14-cv-1798-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

**I.   Introduction**

The plaintiff, Amber Little, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Little timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Little was thirty years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education, as well as some work training. (Tr. at 159.) Her past work experiences include employment as a cashier,

deep fry cook, deli worker, and a poultry plant egg handler. (Tr. at 54-55.) Ms. Little claims that she became disabled on May 10, 2011, due to epileptic seizures. (Tr. at 37, 110, 159.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The

decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See Id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the plaintiff cannot perform other work, the evaluator will find him disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Little meets the non-disability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 19.)  He further determined that Ms. Little has not engaged in SGA since May 10, 2011, the alleged onset of her disability. (*Id.*)  According to the ALJ, Plaintiff's loss of consciousness of uncertain etiology is considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that this impairment neither meets nor medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1: specifically, Plaintiff fails to satisfy the criteria of § 11.02 and § 11.03 which deal with epileptic seizures. (Tr. at 22.)  The ALJ did not find Ms. Little's allegations to be totally credible, and he determined that she has the following RFC: 1) Plaintiff has the ability to perform medium work, and 2) Plaintiff has a

mental impairment, which produces no more than mild mental functional limitations. (Tr. at 23.) Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects up to 25 pounds. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c).

According to the ALJ, Ms. Little is able to perform her past relevant work as a cashier, deep fry cook, deli worker, and poultry plant egg handler. (Tr. at 25.) He determined that Plaintiff "is able to perform it [past work] as actually and generally performed." (*Id.*) The ALJ utilized a vocational expert ("VE") who testified that a hypothetical individual with Plaintiff's RFC would be able to perform the above listed jobs. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 10, 2011, through the date of this decision . . . ." (*Id.*)

II.   **Standard of Review**

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives

deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881,

883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III. Discussion

Ms. Little alleges that the ALJ's decision should be reversed and remanded for two reasons. First, she believes that the ALJ failed to properly consider her treating physician's opinion when he found that plaintiff was not disabled by her loss of consciousness of an uncertain etiology. (Doc. 11 at 14.) Second, Plaintiff contends that the ALJ did not further develop the record as necessary to make a determination on disability. (*Id.* at 15.)

#### A. Treating Physician's Diagnoses

Plaintiff contends that the ALJ improperly evaluated her treating physician's opinion. (Doc. 11 at 12.) A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the

medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not

determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Dr. Emig, a neurologist at Alabama Neurology and Sleep Medicine, is Plaintiff's treating physician. Dr. Emig first saw Plaintiff on September 1, 2011, after a referral from a Dr. Pettus for "spells." (Tr. at 258, 279, 282.) After the first visit Dr. Emig concluded, "Whatever the cause, the patient is medically disabled due to unpredictable nature of episodes at this time." (*Id.*) Therefore, as of September 2011, Dr. Emig was of the opinion that Ms. Little should apply for disability as a result of her disorder. (Tr. at 45-46.) In September 2011, Dr. Emig ordered an electroencephalogram ("EEG") in order to diagnose Plaintiff's brain activity, after which he indicated that Plaintiff was within the normal limits. (Tr. at 280.) Later, in October 2011, Dr. Emig conducted a magnetic resonance imaging test ("MRI") and found the activity to be "unremarkable." (Tr. at 276.) Additionally, Dr. Emig received a copy of a previous MRI from the University of Alabama-Birmingham Hospital ("UAB") that was also marked "unremarkable." (*Id.*) On October 20, 2011, Dr. Emig noted that Plaintiff's Tegretol level was not high and issued a medication change from Carbamazepine 300MG to Levetiracetam 500MG. (Tr. at 275.) A second EEG was conducted in January 2012, where Dr. Emig noted only slight to mild abnormalities of voltage asymmetry

9

and alpha rhythm. Furthermore, the second EEG was negative for epileptic activity. (Tr. at 321-22.)

The ALJ considered Dr. Emig's opinion, but gave it no weight. (Tr. at 24.) Substantial evidence supports this conclusion. First, the ALJ correctly rejected the statement of Dr. Emig that Plaintiff was disabled since it is a statement of disability rather than a medical opinion. (Tr. at 24.) As noted, opinions on some issues, such as whether the claimant is "disabled" and/or "unable to work," the claimant's RFC, whether the claimant's impairments meet or equal a listed impairment, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d); *see* SSR 96-5p, 1996 WL 374183, at *2 (1996); *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986). Opinions on issues reserved to the Commissioner, "even when offered by a treating source, . . . can never be entitled to controlling weight or given special significance." SSR 96-5p, 1996 WL 374183 at *2. "Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is

under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Id.*

Second, the ALJ also pointed out that Plaintiff's treatment notes from May 2011 (the alleged onset date) to January 2012 (the date of Dr. Emig's most recent assessment) indicate that Dr. Emig's opinion seems to be based on subjective complaints by Plaintiff rather than the objective medical evidence. (Tr. at 24.) Meanwhile, objective medical signs and laboratory findings, such as the EEG and MRI tests, demonstrated little evidence of neurological deficits. (Tr. at 276, 280, 321-22.) Therefore, the ALJ properly reasoned that the opinion was not entitled to any significant weight. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Indeed, the consistently normal objective findings in the record, including Dr. Emig's own treatment notes, undermine the disabling limitations that he opined. As the ALJ noted, Plaintiff was neurologically intact, her MRIs, EEGs, and CT scans were normal, and her mental status exams were normal. (Tr. at 24-25, 228-29, 235-36, 243, 261, 263-64, 277, 287-88, 321-22, 325-26, 338-39, 344).

Importantly as well, the medication Dilantin significantly reduced the frequency of Plaintiff's seizure episodes, a fact that further undermines her allegations of disabling seizures. (Tr. at 24, 338). Medical conditions that are controlled with medication are not disabling. *See Dawkins v. Bowen*, 848 F.2d 1211,

1213 (11th Cir. 1988). Indeed, in July 2011, Dr. Emig noted that Dilantin had helped Plaintiff and that she had not had any seizures since adding Tegretol in June 2011. (Tr. at 258). Plaintiff reported having seizures after beginning Dilantin and Tegretol, but, as the ALJ noted, low Dilantin levels in lab tests indicated that Plaintiff was not compliant with her medication regimen. (Tr. at 24, 238, 243, 261, 380). Plaintiff even admitted to non-compliance. (Tr. at 41, 238). When the ALJ asked Plaintiff if she could explain why she was not compliant with her medication regimen, she said, "no." (Tr. at 41).

Additionally, Dr. Emig's opinion that Plaintiff is disabled is simply unsupported by the rest of the evidence in the record. For example, Ms. Little's daily activities do not support the finding that she is disabled. A claimant's daily activities are relevant in the consideration of subjective symptoms. *See* 20 C.F.R. §§ 404.1529 (c)(3), 416.929(c)(3); *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). While participation in daily activities of short duration does not necessarily disqualify a claimant from disability, that does not mean it is improper for the ALJ to consider the daily activities at all. *See Makjut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010). Plaintiff takes care of a child, a puppy, and even horses, in addition to keeping up with her own affairs. (Tr. at 192-99.)

Upon review of Plaintiff's medical records, including Dr. Emig's treatment notes, the Court is of the opinion that the ALJ had good cause to disregard Dr. Emig's September 2011 assessment of Plaintiff's condition as disabled. *See Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41.

B.     **Failure to Develop the Record**

Plaintiff asserts that the ALJ failed to fully develop the record as necessary to determine disability. Specifically, Ms. Little alleges that "the ALJ has considered the unknown etiology of the claimant's seizures as a mark against the treating physician's opinion that the claimant has a severe seizure disorder, without ordering further testing at an epilepsy monitoring unit." (Doc. 11 at 15.) An ALJ does have a duty to develop a full and fair record. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). However, there must be a "showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded . . . for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997). Furthermore, it is fundamentally the responsibility of the party seeking benefits to prove her disability, and therefore "[S]he is responsible for producing evidence to support [her] claim." *Ellison*, 355 F.3d at 1276. Furthermore, the regulations state that a consultative exam *may* be purchased when the record evidence is not sufficient to

13

support a decision, such as when there is a conflict, inconsistency, ambiguity, or insufficiency in the evidence, or there is an indication of a change in a claimant's condition. *See* 20 C.F.R. §§ 404.1519a, 416.919a. Therefore, where the ALJ's findings are supported by evidence sufficient for a decision, the ALJ is not obligated to seek additional medical testimony. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).

In *Wilson*, the court held that the ALJ was not obligated to seek "additional expert medical testimony" because "the record, which included the opinions of several physicians including [those] who treated [the plaintiff], was sufficient for a decision and additional expert testimony was unnecessary." *Id*. Here, the ALJ reviewed Plaintiff's extensive medical records, which included treatment notes from several doctors as well as Dr. Emig, a neurologist at Alabama Neurology and Sleep Medicine. (Tr. at 270-91, 334-40.) Additionally, although the etiology of Plaintiff's seizures was unclear, the objective medical evidence, which includes CT scans, EEG tests, and MRI's, clearly shows that the seizures did not have a severely limiting effect on Plaintiff's abilities. (Tr. at 236, 296.) The record also showed a continued history of medication non-compliance. (Tr. at 296.) The record appears to contain all of Plaintiff's relevant past medical records as they relate to the seizure disorder. Additionally, the record even includes a hand written

"seizure diary" by Plaintiff. (Tr. at 207-25.)

That is, the evidence the ALJ received was adequate to determine whether the Plaintiff was disabled. In taking into account the medical record as well as medical expert testimony, the ALJ "scrupulously and conscientiously" probed into, inquired of, and explored all the relevant facts. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Plaintiff failed to meet her burden of proving that her seizures caused actual, specific limitations, corroborated by the evidence, beyond what the ALJ found. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (the severity of a medically ascertained impairment must be measured in terms of its effect upon a claimant's ability to work and not simply in terms of deviation from medical standards of bodily normality); *see also Russell v. Astrue*, 331 F. App'x 678, 681 (11th Cir. 2009) (holding that the ALJ did not err by not finding the plaintiff's high blood pressure was a severe impairment, even though the records showed the readings were high, because the plaintiff failed to show that the high blood pressure caused her to be unable to work). To remand the case merely to determine what caused the seizures would not be warranted, especially since such evidence would likely not provide additional information regarding Plaintiff's functional limitations: i.e., whether she can work.

It appears to the Court that the ALJ adequately developed the medical record and addressed Plaintiff's allegations that he failed to "develop a full and fair record." *Ellison*, 355 F.3d at 1276. The extensive record of medical and other evidence supports the ALJ's conclusion that Plaintiff's condition did not cause disabling limitations and shows that he developed an adequate record. (Tr. at 26, 236-385.)

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Little's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON JANUARY 21, 2016.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704